O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BIRD BARRIER AMERICA, INC.,** | CASE NO. SACV 09-0418 AG (RNBx) |
| Plaintiff(s), | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR FOR MORE DEFINITE STATEMENT** |
| **BIRD-B-GONE, INC.,** | |
| Defendant(s). | |

This case concerns alleged patent infringement of a bird deterrent device and related claims. Defendant Bird-B-Gone, Inc. ("Defendant") has filed a motion to dismiss or for more definite statement ("Motion"). After considering all papers and arguments submitted, the Court GRANTS IN PART AND DENIES IN PART the Motion with leave to amend.

**BACKGROUND**

Plaintiff Bird Barrier America, Inc. ("Plaintiff") is the assignee of U.S. Patent No. 7,481,021 ("the '021 Patent"). (First Amended Complaint ("FAC") ¶ 7.) This patent "relates to a device that delivers an electric shock to an animal that comes into contact with it." (FAC ¶ 8.) The patented device is primarily used "as a bird deterrent." (FAC ¶ 8.)

Defendant makes and sells a device called the "Bird Jolt FlatTrack." (FAC ¶ 10.) According to Plaintiff, this device "incorporates and infringes the inventions protected by one or more claims of the '021 Patent . . . ." (FAC ¶ 10.) Further, Defendant "has without authorization used photographs of Plaintiff's products on [its] website and/or in catalogs and advertisements, falsely representing that the product depicted was its own product when in fact it was Plaintiff's. (FAC ¶¶ 32-33.) It also "substantially copied other aspects of Plaintiff's catalog and product offerings . . . ." (FAC ¶ 34.) And Defendant has made false and misleading representations concerning its product and its business success. (FAC ¶¶ 36-40.) According to Plaintiff, Defendant made and sold its allegedly infringing device both during the patent prosecution and after the issuance of the '021 patent. (FAC ¶ 26.)

Plaintiff sued Defendant based on these allegations. Plaintiff's FAC asserts claims for (1) patent infringement, (2) pre-issuance damages, (3) false designation of origin, (4) trade dress infringement, (5) copyright infringement, and (6) unfair competition. The Court now considers whether Plaintiffs second, third, fourth, and fifth claims can survive Defendant's Motion and whether Defendant must provide a more definite statement of its third and sixth claims.

**LEGAL STANDARD**

A court should dismiss a complaint when its allegations fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "'[D]etailed factual allegations' are not required." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

(May 18, 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993).

But the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556). A court should not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Iqbal*, 129 S. Ct. at 1940, or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies of the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

**ANALYSIS**

**1.    PLAINTIFF'S CLAIM FOR PRE-ISSUANCE DAMAGES**

Defendant argues that Plaintiff's claim for pre-issuance damages is not available as a matter of law "because the issued claims in [the '021 Patent] are not substantially identical to the claims contained in the published patent application . . . ." (Mot. 1:10-14.) The Court agrees.

35 U.S.C. § 154(d) provides that

> a patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent . . . and ending on the date the patent is issued--

>     (A) (i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States; or
>     (ii) if the invention as claimed in the published patent application is a process, uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application; and
>     (B) had actual notice of the published patent application and, in a case in which the right arising under this paragraph is based upon an international application designating the United States that is published in a language other than English, had a translation of the international application into the English language.

Section 154(d)(2) states that "a reasonable royalty shall not be available under this subsection unless the invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application." Section 154(d) does not define "invention as claimed," and the parties have not cited any case doing so.

Defendant argues that Section 154(d)(2) means that a party may not receive pre-issuance damages if there are "substantive changes between the claims in the published application and those in the issued patent." (Mot 5:11-13.) Under this interpretation, Defendant contends that Plaintiff may not receive pre-issuance damages because there were substantive changes between the claims in the application for the '021 Patent and the claims in the issued patent.

Plaintiff does not dispute that there were substantive changes between the claims in the application and the claims in the '021 Patent. Rather, Plaintiff asserts that Defendant's interpretation of Section 154(d)(2) is flawed. According to Plaintiff, "the requirement for 'substantial identity' for provisional rights [in Section 154(d)] is directed towards the whole of the invention itself, ('as claimed')," and not the language of the claims. (Opp'n 10:19-22.) Thus, Plaintiff argues, it is entitled to pre-issuance damages because the invention as a whole in the application is substantially identical to the invention as a whole in the issued patent.

Considering the parties' arguments, the Court must decide whether the phrase "substantially identical to the invention as claimed" requires substantial identity between the claims or the invention as a whole in the application and the issued patent. Defendant has offered the more persuasive arguments.

First, the text of the provision specifically refers to claims.  It says that the "invention *as claimed* in the patent [must be] substantially identical to the invention *as claimed* in the published patent application."  35 U.S.C. § 154(d)(2) (emphasis added).  Congress could have omitted the words "as claimed" if it desired the invention to be the focus of the inquiry.  But the addition of the words "as claimed" establishes that Congress specifically required substantial identity between the claims in Section 154(d)(2).

Second, the legislative history of Section 154(d) supports reading the provision as requiring substantial identity between the claims.  The House Committee Report states that the "substantially identical" requirement in Section 154(d) should be interpreted "upon the decisional law for establishing intervening rights under the reissue statute.  In section 252 of title 35, the term identical has, heretofore, been used without qualification, but the courts have interpreted that term to encompass *claims* that are substantially identical."  105 H. Rpt. 39, 48 (citing *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1 USPQ2d 1563 (Fed. Cir. 1987) (emphasis added)).  This indicates that the House Committee contemplated that the claims, not the inventions, must be substantially identical.

Legislative history alone ordinarily is not a definitive authority on the meaning of a statute.  But it is appropriate to consider here, since it shows that the Court's construction of Section 154(d)(2) is the most reasonable construction of the provision considering its text and the policy behind it.  That policy itself can be properly found in the legislative history:

> If provisional rights were available in the situation where the only valid claim infringed first appeared in substantially that form in the granted patent, the public would have no guidance as to the specific behavior to avoid between publication and grant.  Every person or company that might be operating within the scope of the disclosure of the published application would have to conduct her own private examination to determine whether a published application contained patentable subject matter that she should avoid.  The burden should be on the applicant to initially draft a schedule of *claims* that gives adequate notice to the public of what she is seeking to patent.

Statements on Introduced Bills and Joint Resolutions, Senate, S. 1948, Cong. Rec. S14719 (1999) (emphasis added).  Under Plaintiff's reading of the provision, people looking at the

application would not have definitive notice of what inventors regarded as their inventions. Substantial identity between the claim language is needed to achieve this notice.

At oral argument, Plaintiff argued that the Court's construction of "invention as claimed" would essentially render section 154(d) illusory. According to Plaintiff, claims are amended so frequently throughout patent prosecutions that hardly any issued patents will have claims that are substantially identical to the claims in the published application. The Court disagrees. Claims can be amended and still be without substantive change. But here, Plaintiff has offered no credible response to Defendant's argument that the claims at issue are not substantially identical.

Thus, the Court GRANTS Defendant's Motion concerning Plaintiff's claim for pre-issuance damages with leave to amend. Defendant argues that this claim cannot be cured by amendment, and so this portion of its Motion should be granted without leave to amend. At this point, the Court declines to deny leave to amend since the issue of amendment was not argued thoroughly in Defendant's papers or at oral argument. Plaintiff will have leave to amend its claim for pre-issuance damages.

**2.      PLAINTIFF'S CLAIM FOR FALSE DESIGNATION OF ORIGIN**

Defendant argues that Plaintiff's claim for false designation of origin must fail. More specifically, Defendant asserts that Plaintiff "failed to provide [Defendant] with fair notice as to how [Defendant] has allegedly 'passed off' [Plaintiff's] products as their own." The Court disagrees.

The Ninth Circuit has held that "[i]mplied passing off involves the use of a competitor's advertising material, or a sample or photograph of the competitor's product, to impliedly represent that the product being sold is made by the competitor." *Lamothe v. Atlantic Recording Corp.*, 847 F.2d 1403, 1406 (9th Cir. 1988). Here, Plaintiff has "alleged that [Defendant], without authorization, used photographs of [Plaintiff's] products in its advertisement and catalogs, and impliedly 'passed off' [Plaintiff's] products as its own." (Opp'n 14:4-6; FAC ¶¶ 29-33.) The Court finds that Plaintiff's allegations are sufficient.

Defendant argues that Plaintiff "is attempting to impermissible stretch the bounds of the Lanham Act to create a quasi-copyright or patent protection" for its photographs. (Reply 4:13-17 (citing *Dastar Corporation v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28, 37 (2003)).) This argument is unpersuasive. *Dastar* prohibited use of the Lanham Act to protect an "idea, concept, or communication . . . [which] would be akin to finding . . . [the Lanham Act] created a species of perpetual patent and copyright protection, which Congress may not do." *Dastar*, 539 U.S. at 37. Here, Plaintiff is not trying to invoke the Lanham Act as a surrogate for copyright protection. Rather, it is claiming that Defendant used its photographs to falsely represent the origin of Planitiff's products.

Finally, Defendant requests that the Court order Defendant to "supply a more definite statement with respect to Lanham Act claims in paragraphs 29-35 . . . , since those claims are vague and ambiguous." But Defendant is incorrect that those claims are vague and ambiguous. Rather, Defendant is on notice that Plaintiff is alleging it improperly passed off photographs of Plaintiff's products.

## 3.  PLAINTIFF'S TRADE DRESS INFRINGEMENT CLAIM

Defendant next argues that Plaintiff's trade dress infringement claim is deficient. The Court disagrees.

"A product's 'trade dress' is its total image and overall appearance; it includes 'features such as size, shape, color, color combinations, texture, or graphics.'" *Kendall-Jackson Winery v. E. & J. Gallo Winery*, 150 F.3d 1042, 1045 n.2 (9th Cir. 1998) (quoting *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989)). Section 43(a) of the Lanham Act protects trade dress from infringement. *Id*. at 1046. "To state an infringement claim under § 43(a) - whether it be a trademark claim or a trade dress claim - a plaintiff must meet three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion." *Id*. at 1046-47.

1  Defendant contends that Plaintiff has not "specifically identif[ied] which elements of its
2 product it believes are entitled to trade dress protection." (Reply 6:9-11.) But Plaintiff has
3 alleged a lengthy recitation of its products characteristics that it alleges are entitled to trade dress
4 protection. (*See* FAC ¶ 43-46.) For instance, Plaintiff claims that its product

> included two silver-colored elongate metal elements sewn to an extruded base. The sewing consisted of a single strand of light-colored stitching, down the approximate center of each of the metal elements. Each of the two silver-colored elements were approximately one-quarter inch in width and were separated from one another by slightly less than one-half inch, approximately. The base was approximately one and one-half inches wide, such that the distance between the outside of each of the metal elements and the outside edge of the base was approximately three-eights of an inch. The height of the base at the portion where the metal elements are attached is approximately three-sixteenth of an inch, and the width of the base tapers, becoming less toward its outside edges. When Plaintiff introduced its 'Bird Shock Flex Track' product, it was available with an extruded base in the following colors: gray, beige, black and brick-red.

15 (FAC ¶ 44.) In light of Plaintiff's thorough recitation, the Court cannot find that Plaintiff has not
16 specified "which features comprise [Plaintiff's] alleged trade dress," as Defendant suggests.
17 (Reply 5:16.)
18  Defendant also argues that Plaintiff's trade dress infringement claim must fail because the
19 alleged trade dress characteristics of Plaintiff's device are functional. Defendant candidly
20 admits that "the issue of functionality is a factual issue, and therefore generally not amenable to
21 resolution at this stage in the case." (Mot. 18:1-2.) Nonetheless, Defendant argues that "this
22 claim should be dismissed because [Plaintiff's] recitation of alleged trade-dress features as
23 elements in its patent claims precludes reasonable minds from concluding that those features are
24 non-functional." (Mot. 18:3-5.)
25  The Court disagrees. While Defendant's argument might prevail at a summary judgment
26 stage, the Court will not address functionality during this motion to dismiss.
27  The Motion concerning Plaintiff's trade dress infringement claim is DENIED.
28

8

### 4. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM

Finally, Defendant argues that Plaintiff's claim for copyright infringement must fail. Specifically, Defendant claims that Plaintiff "has failed to identify a copyright registration that would allow [Plaintiff] to properly assert a claim for copyright infringement." (Mot. 21:3-4 (emphasis omitted).) According to Defendant, Plaintiff's copyright registration "only covers the text of [its] product catalog and not the photographs or drawings depicted in the catalog." (Mot. 21:11-13 (emphasis omitted).)

Plaintiff disagrees. It believes that the copyright registration of its catalog "includes [registration of] its constituent parts for purposes of asserting a copyright infringement claim." (Opp'n 19:7-9.) And Plaintiff alleges that it has "claimed that the photographs and drawings included in the catalogs also each constitute an original work for which copyright protection applies." (Opp'n 20:3-6.)

The Court agrees with Defendant. Plaintiff cites cases stating that

> in general, a registered copyright in a derivative work (such as a catalog containing photographs of items) necessarily encompasses all the original works within the derivative work, *if the owner of the copyright in the derivative work also holds all ownership rights in the original works upon which the derivative works are based*.

*BESPAQ Corp. v. Haoshen Trading Co.*, 2005 WL 14841, at *2 (N.D. Cal. 2005) (citing *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 746-47 (2d Cir. 1998)) (emphasis added). But Defendant correctly points out in response that "there is no allegation in the complaint that [Plaintiff] owns those photographs. Presumably one or more individuals would have had to take the photographs, (a company obviously cannot take a photograph), so there would have to be assignments from the photographer(s) to the company." (Reply 13:11-14.) The Court agrees with Defendant that Plaintiff's copyright infringement claim must fail without such an allegation.

The Motion to Dismiss Plaintiff's copyright infringement claim is GRANTED with leave to amend.

### 5. PLAINTIFF'S CLAIM FOR UNFAIR COMPETITION

Defendant argues that Plaintiff should be ordered to provide a more definite statement concerning its claim for unfair competition. It contends that this claim is "vague and ambiguous" and "based on acts that are deemed pre-empted by Federal Patent, Copyright, or Trademark law." (Mot. 23:16-19.) The Court agrees.

Plaintiff's unfair competition claim incorporates its other claims and alleges that "each of the wrongful acts described above were done by [Defendant] to unfairly gain a competitive advantage over its competitors such as the Plaintiff." (FAC ¶ 52.) The blanket incorporation of other claims makes it unreasonably difficult for Defendant to prepare a responsive pleading to Plaintiff's unfair competition claim. *See* Fed. R. Civ. P. 12(e). This is especially true where Plaintiff's copyright infringement claim has been dismissed and Defendant is contending that certain acts are pre-empted by federal law.

The Court GRANTS Defendant's Motion for a More Definite Statement concerning Plaintiff's unfair competition claim.

### DISPOSITION

The Court GRANTS IN PART and DENIES IN PART Defendant's Motion. To the extent the Motion is granted, it is granted with leave to amend. If Plaintiff wishes to amend its complaint, it shall do so within 21 days of this Order. The amended complaint shall identify changes made from the FAC, preferably in a red-line version.

IT IS SO ORDERED.

DATED: November 19, 2009

_____
Andrew J. Guilford
United States District Judge