O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIRD BARRIER AMERICA, INC., ) | CASE NO. SACV 09-0418 AG (RNBx) |
| Plaintiff(s), ) | |
| v. ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION |
| BIRD-B-GONE, INC., ) | |
| Defendant(s). ) | |

This case concerns allegations of patent infringement. Plaintiff Bird Barrier ("Plaintiff") alleges, among other things, that Defendant Bird-B-Gone, Inc. ("Defendant") has infringed Plaintiff's bird deterrent device patent. Defendant filed a Motion for Summary Adjudication ("Motion"). In the Motion, Defendant asks the Court to determine that one of its products, the "New Bird Jolt Flat Track Product" ("New Bird Jolt"), does not infringe Plaintiff's patent. After considering all papers and arguments submitted, the Court GRANTS the Motion.

**BACKGROUND**

Plaintiff Bird Barrier America, Inc. ("Plaintiff") is the assignee of U.S. Patent No. 7,481,021 ("the '021 Patent"). (Declaration of Joshua L. Emory ("Emory Decl."), Exh. A, First Amended Complaint ("FAC") ¶ 7.) This patent "relates to a device that delivers an electric shock to an animal that comes into contact with it." (FAC ¶ 8.) The patented device is primarily used "as a bird deterrent." (FAC ¶ 8.) Plaintiff alleges that Defendant's "Bird Jolt Flat Track" products infringe Plaintiff's patent. (FAC ¶¶ 7, 10.)

The '021 Patent has 34 claims. (Statement of Undisputed Facts ("SUF") ¶ 2.) Claims 1 and 18 are the only claims at issue here. (SUF ¶ 3.) Claim 1 recites:

> An electric deterrent device for attachment to a surface comprising . . . at least a pair of electricity conducting elements . . . , each said element comprising three or more strands interwoven to form a braided element rather than a mesh comprised of warp and weft strands in perpendicular arrangement and rigidly attached to one another at the warp/weft intersections, wherein when said base is bent in convex or concave flex the compression or extension stress placed on said braided elements is at least partially absorbed by individual strands expanding apart from, or contracting towards, other strands . . . .

('021 Patent, at C6:L28-46.) Claim 18 recites:

> In an electrical . . . bird deterrent device comprising . . . at least a pair of electrically conductive elements attached to the base and attachable to a power source, . . . comprising at least three individual strands woven together in a braid-like fashion rather than a mesh comprised of warp and weft strands in perpendicular arrangement rigidly attached at their warp/weft intersections, wherein when said base is bent in any direction, the stress placed on said conductive elements is at least partially absorbed by the width of said braid-like elements expanding or contracting as said individual strands move . . . .

('021 patent, at C7:L33-45.)

Defendant made two different Bird Jolt Flat Track products. The original product ("the Old Bird Jolt") was sold before the issuance of the '021 Patent, and the New Bird Jolt was sold

after issuance of the '021 Patent.  (Declaration of Bruce Donoho in support of Defendant's Motion ("Donoho Decl.") ¶¶ 3-6.)  The New Bird Jolt product has a pair of electrically conducting elements, each of which contains an inner knitted tube and an outer knitted tube.  (SUF ¶ 22.)   Each of the tubes is made by knitting two wire strands.  (*See* Supplemental Declaration of Josh Emory in support of Defendant's Reply ("Suppl. Emory Decl.") ¶ 5, Exh. I.)  The inner tube and the outer tube are not connected, and the inner tube can be pulled out from the inner tube.  (Suppl. Emory Decl. ¶ 8-10, Exhs. L-N.)

In this Motion, Defendant seeks summary adjudication of non-infringement as to the New Bird Jolt product only.

**LEGAL STANDARD**

**1.      GENERAL SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact.  *Id.* at 322-23.  If the non-moving party meets this burden,

then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

### 2.     SUMMARY JUDGMENT IN PATENT INFRINGEMENT CASES

In a summary judgment requiring claim construction, the court must first construe the meaning and scope of the asserted claims. *Cybor Corp. v. FAS Techs.,* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). The court then compares the properly construed claims to the allegedly infringing device to determine whether there is a genuine issue of fact as to infringement. *Id.* If the plaintiff cannot prove that the defendant's device has every claim limitation, summary judgment should be granted in the defendant's favor. *Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577-78 (Fed. Cir. 1989).

The Court finds that the disputed claims in this case can most efficiently be construed as part of the motion for summary adjudication and not in a separate claim construction hearing.

## ANALYSIS

### 1.     GENERAL CLAIM CONSTRUCTION PRINCIPLES

Claim construction is an issue of law "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.* 517 U.S. 370, 372 (1996). Such construction begins with an analysis of the claim language itself, *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001), since the claims define the scope of the claimed invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). In construing claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." *Id.* (internal quotation marks omitted).

The ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. "[T]he

person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*  Thus, in determining the ordinary meaning of a claim term, courts must read the claim term in the context of the entire patent.  Where the patent itself does not make clear the meaning of a claim term, courts may look to "those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean," including the prosecution history and "extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* at 1314.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id*.  "In such circumstances general purpose dictionaries may be helpful." *Id.*  In other cases, claim terms will not be given their ordinary meaning because the specification defines the term to mean something else. *Novartis Pharms. Corp. v. Abbott Labs.*, 375 F.3d 1328, 1334 (Fed. Cir. 2004); *Kumar v. Ovonic Battery Co., Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003).

**2.      CLAIM CONSTRUCTION OF THE CLAIMS ONE AND EIGHTEENTH**

To rule on the Motion, the Court must first construe two phrases: (1) "each said element comprising three or more strands interwoven to form a braided element," recited in claim 1 of the '021 Patent; and (2) "said conductive elements comprising at least three individual strands woven together in a braid-like fashion," recited in claim 18 of the '021 Patent.

The parties dispute the "ordinary and customary meaning," *Phillips,* 415 F.3d at 1312, of the term "braid."  Defendant offers the testimony Dr. Abdel-Fattah M. Seyam ("Dr. Seyam"), to show that a "braid" is "formed by intertwining three or more yarns in such a way that no two yarns are twisted around one another."  (Declaration of Dr. Seyam in support of Motion ("Seyam

Decl."), p. 5.) Plaintiff argues that this definition is underinclusive, and that Dr. Seyam's definition is not one of a "person of ordinary skill in the art" of the patent because Dr. Seyam declared that his definition is that of "a person of ordinary skill in the textile arts" rather than an expert in electro-mechanical deterrent devices. But the Court finds that in construing terms like "braid," "weave," "knit," and "mesh," the testimony of a textile engineer is highly instructive. Additionally, the Court finds that Dr. Seyam has demonstrated skill and expertise in the field of mechanical engineering as well as textile engineering. (*See* Supplemental Declaration of Dr. Seyam in support of Reply ("Suppl. Seyam Decl.") ¶ 1, 4.) If the Court were to find that a POSIT in this case must be skilled in mechanical engineering, Dr. Seyam would still be qualified. If, on the other hand, the Court were to find that because '021 Patent focuses on the textile nature of the conductive elements, a POSIT must be skilled in textile engineering, then the Court would have to discount the testimony of Plaintiff's own expert, Dr. James Williams Jones ("Dr. Jones"), because while Dr. Jones is a mechanical engineer, he is not a textile engineer.

But the Court need not make such a finding to reach a decision here. Even when the Court fully considers the testimony of Dr. Jones, the evidence weighs in favor of Dr. Seyam's definition of "braid." This conclusion is based in part on the fact that in Dr. Jones's declaration, he "only considered whether there is at least . . . a dispute on the issues raised by [Defendant's] motion" because Plaintiffs counsel informed Dr. Jones that "the test is whether there is or is not a 'genuine factual dispute' with respect to infringement." (Dr. Jones's Declaration in support of Plaintiff's Opposition ("Jones Decl.") ¶ 4.) But as noted, the analysis for summary adjudication of noninfringement is a two step inquiry. The first step is claim construction. *Cybor Corp.,* 138 F.3d at 1454. And of course, judges, not juries, construe claims. *Markman,* 517 U.S. at 372. Accordingly, the issue of "whether there is a genuine dispute about the proper definition of a the [sic] claim phrase 'braided element,'" (Jones Decl. 4:1-2), is relevant only to the extent that an affirmative answer means that the Court must resolve the dispute. The Court's resolution of this dispute, after careful consideration of the evidence presented, is a finding that Dr. Seyam's testimony is the most credible and most relevant to the claim construction of the '021 Patent, and

6

that a "braid" in the context of the '021 Patent is therefore three or more wire strands woven together in a way that no two wire strands are twisted around one another..

Plaintiff also argues that the exclusion of "mesh weaves" in the claim language means that all other meshes are included in the claim language. This argument fails. The term "mesh" means that there are open spaces between strands, and braids, weaves, and knits can all be "mesh." (Suppl. Seyam Decl. ¶ 10.) The mesh exclusion language in claims 1 and 18 simply exclude mesh, or open, braid-like weaves. If the Court were to construe the mesh exclusion language to include all other types of mesh arrangements, then the terms "braid-like" and "braided" would become meaningless. *See ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088-90 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms"). Accordingly, the Court cannot find that the exclusion of mesh equates to the inclusion of all non-mesh arrangements.

Thus, in determining whether the New Bird Jolt infringes the '021 Patent, the Court construes "braid" in the '021 Patent to mean "three or more wire strands woven together in a way that no two wire strands are twisted around one another." The first and eighteenth claims require that the conductive elements have two limitations: (1) at least three strands; (2) that are woven tightly together into a braid or in a braid-like manner.

**3.    COMPARISON OF CLAIMS AS CONSTRUCTED AND DEFENDANT'S DEVICE**

A patentee claiming infringement must present proof that the alleged infringing device meets "each and every claim limitation." *Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001). If even one claim limitation is missing, there can be no infringement. *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 137 (Fed. Cir. 2000) (absence of even one claim limitation "is sufficient to negate infringement."); *Dolly, Inc. v. Spaulding & Evenflo*

7

*Cos.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

Here, Plaintiff cannot show that the New Bird Jolt infringed the '021 Patent because the New Bird Jolt does not have at least three strands that are woven together into a braid or in a braid-like fashion. The conductive elements in the New Bird Jolt product are made of an inner knitted tube and an outer knitted tube. (Suppl. Emory Decl. ¶¶ 5-6, 8-9, Exhs. H, I, J, L, & M.) Braiding and knitting are two different processes. As noted in Section 3, a "braided" product is made by "intertwining three or more" strands "in such a way that no two [strands] are twisted around one another." (Seyam Decl., p. 5.) In contrast, a "knitted" product is formed by "interloping" the strands into "vertical and horizontal sets of intermeshed loops to form an integrated structure." (Seyam Decl., p. 4.) Braiding and knitting are also different processes that use different machinery. A knitting machine uses a series of needles with latches and hooks that pull the strand into the knitted product in a seven step process. (Suppl. Seyam Decl. ¶ 14 and fig. 1.) Several hooks are touching the same strand at any point in the knitting process. (Suppl. Seyam Decl. ¶ 14 and fig. 1.) A braid, on the other hand, is formed using at least three strands, and the movement of each strand is controlled by a separate carrier. (Suppl. Seyam Decl. ¶ 14 and fig. 2.) Because the New Bird Jolt conductive elements are knitted, rather than braided, the limitations in the '021 Patent claims that require the conductive element to have at least three strands woven together into a braid or in a braid-like manner are not met here, so there can be no infringement. *Forest Labs*, 239 F.3d 1310.

Plaintiff does not offer sufficient evidence to create a genuine issue of material fact as to the use of a knitted, rather than braided, conductive elements in the New Bird Jolt product, or as to the existence of a material difference between knitting and braiding. Accordingly, Defendant's Motion for summary adjudication of non-infringement of the New Bird Jolt product is GRANTED.

**DISPOSITION**

The Court GRANTS Defendant's Motion for summary adjudication of non-infringement of the New Bird Jolt product.

IT IS SO ORDERED.

DATED: December 16, 2009

Andrew J. Guilford
United States District Judge